# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**UNITED STATES OF AMERICA**,

    Plaintiff,

Civil Action No. 23-cv-11010

v.

**MICHIGAN CIVIL SERVICE COMMISSION,
MICHIGAN DEPARTMENT OF
TREASURY,
THE STATE OF MICHIGAN'S
OFFICE OF STATE EMPLOYER.**

    Defendants.

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff United States of America ("United States") alleges as follows:

### NATURE OF THE ACTION

1. This action is brought by the United States against Defendants, the Michigan Civil Service Commission (the "CSC"), the Michigan Department of Treasury (the "Department of Treasury"), and the State of Michigan's Office of State Employer (the "OSE") (collectively "Defendants") to enforce the statutory

1

and regulatory provisions of Title I of the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. §§ 12111-12117, which incorporates, through 42 U.S.C. § 12117(a), the powers, remedies, and procedures set forth in Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action under 42 U.S.C. §§ 12117(a) and 2000e-5(f), and 28 U.S.C. §§ 1331, 1343, and 1345.

3. This Court has authority to grant a declaratory judgment as well as further necessary or proper relief based on a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, and authority to grant equitable relief and monetary damages pursuant to 42 U.S.C. § 12117.

4. Venue is proper in this district under 28 U.S.C. § 1391(b) because Defendants reside in the State of Michigan, and Defendants conduct business and a substantial part of the events and omissions giving rise to this action occurred in the Eastern District of Michigan.

5. Defendants are persons within the meaning of 42 U.S.C. §§ 2000e(a) and 12111(7) and 29 C.F.R. § 1630.2(c).

6. The Department of Treasury is an employer within the meaning of 42 U.S.C. §§ 2000e(b) and 12111(5), and 29 C.F.R. § 1630.2(e); and a covered entity within the meaning of 42 U.S.C. § 12111(2) and 29 C.F.R. § 1630.2(b).

7. Pursuant to the Governor of Michigan's Executive Order 2007-30, as implemented through service-level agreements and Michigan Civil Service Rules, CSC Human Resources staff ("HR staff") act on behalf of state agencies, such as the Department of Treasury, and in accord with the direction, policies, and work rules of the appointing authorities, Michigan Civil Service Rules and Regulations, and OSE guidance. Defendant OSE has primary responsibility for compliance with state and federal disability rights laws on matters relating to state employment.

8. Accordingly, the CSC and the OSE are necessary Defendants within the meaning of Fed. R. Civ. P. 19(a)(1)(A).

## FACTUAL ALLEGATIONS

9. Defendants are governmental entities and/or executive agencies of the State of Michigan.

10. Complainant worked for the Department of Treasury from 2004 to 2018 and served as a Customer Service Representative 9 from 2009 until her death in 2018.

3

11. During all times relevant to this Complaint's alleged violations, Complainant had kidney disease, which substantially limited the operations of the renal system, a major bodily function.

12. Complainant was diagnosed with kidney disease in 2013. After her diagnosis, Complainant's treating physician advised her that she would require dialysis treatment in the near future. Complainant elected to pursue ambulatory peritoneal dialysis.

13. Ambulatory peritoneal dialysis is a type of dialysis treatment that can be performed outside of a medical facility, including at a patient's home or office. It requires a patient to periodically flush and drain dialysis solution through an abdominal catheter.

14. Complainant's physician advised her that at least one dialysis treatment would be required during her scheduled work hours for the first month of treatment.

15. In June 2013, Complainant notified HR staff assigned to support the Department of Treasury via email about her disability and that she would require dialysis treatment sometime in the future. Complainant advised HR staff that once she started dialysis treatment, her treatment schedule would require the daily use of a semi-sterile room for one hour.

4

16. HR staff are employees of Defendant CSC, a centralized state agency, and assigned to support specific agencies, including the Department of Treasury.

17. On June 13, 2013, HR staff emailed Complainant, stating that it was unlikely that her request would be approved.

18. Complainant did not pursue her accommodation request again until the spring of 2014, when, due to her declining kidney function, her need for dialysis treatment became imminent.

19. On May 27, 2014, Complainant submitted a reasonable accommodation request form. On the form, Complainant stated, "I need a semi-sterile room for a half hour a day to perform perionteal [peritoneal] dialysis. I can perform my job duties as normal." She described her disability as, "end stage kidney disease requiring dialysis for life or until kidney transplant done." The Complainant's Department of Treasury supervisor and treating physician both signed the form.

20. Although Complainant's request form stated that her disability was "for life or until kidney transplant," she only requested use of a semi-sterile room for the month of July 2014, because she believed that her treating physician intended to modify her dialysis treatment schedule in August 2014.

21. HR staff approved Complainant's use of a semi-sterile room for one hour each day during the month of July 2014. They allowed her to use an overflow office space with paper taped over an air vent. Complainant performed the procedure during her lunch hour, without disruption to the essential functions of her position.

22. On July 31, 2014 and August 1, 2014, Complainant and HR staff exchanged emails about Complainant's need to extend this accommodation into August 2014 because her dialysis schedule had not been modified, as previously anticipated. HR staff denied the request and stated that they could not extend the accommodation, citing unsubstantiated complaints about the Complainant's accommodation and their unfamiliarity with the dialysis procedure.

23. On or about September 25, 2014, Complainant submitted another reasonable accommodation request form for the same accommodation—use of a semi-sterile room to perform peritoneal dialysis. The request form was signed by the Complainant's supervisor and her treating physician.

24. In September 2014, Complainant also filed a grievance with her union.

25. On or about October 15, 2014, Complainant filed a timely charge with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging that the

Department of Treasury failed to provide a reasonable accommodation for her disability in violation of the ADA.

26. On October 28, 2014, HR staff again denied the Complainant's reasonable accommodation requests, stating in relevant part:

> **The first requirement for approving a reasonable accommodation is that the individual has a qualifying disability. Even though an employee could have a condition that meets the definition of a disability under the ADA, it might not rise to the level of a reasonable accommodation as it relates to their employment. Again, after careful, in depth review of the medical information provided and the Department's ability to meet the "conditions" of the request (i.e., indefinite need, health implications on other workers, sterile room, etc.),** ***the Department does not consider that the employees' condition rises to the level of a reasonable accommodation.*** **It is also noted that the employees' health condition has not adversely affected her attendance or ability to report to work on a daily basis without the requested accommodation.**
> **(Emphasis added)**

27. While her union grievance and EEOC charge were pending, Complainant continued to meet with HR staff to educate them about her dialysis procedure and her medical condition.

28. In December 2014, HR staff agreed to accommodate Complainant, starting in January 2015. Specifically, HR staff made preparations for Complainant to use the room where nursing mothers may express breastmilk ("Nursing Room") for one hour per day. To create a semi-sterile environment, HR

7

staff and the Department of Treasury arranged for a switch to be installed, which allowed Complainant to temporarily suspend airflow into the Nursing Room.

29. While arranging the Complainant's access to the Nursing Room, HR staff shared information about Complainant's dialysis treatment and medical condition with employees outside of HR. Specifically, HR staff shared information regarding Complainant's medical condition and treatment with a non-supervisory, non-managerial, Department of Treasury employee who was coordinating access to the Nursing Room.

30. HR staff also instructed this employee to share information regarding the Complainant's medical condition and treatment with other employees who regularly used the Nursing Room. Following this instruction, the employee shared the Complainant's medical information with several coworkers.

31. The disclosure of Complainant's medical information to her coworkers caused Complainant significant emotional distress, embarrassment, and frustration.

32. Defendants' denial of Complainant's reasonable accommodation request prohibited her from conducting dialysis treatments at work from August 2014 until January 2015.

33. During the time that the Department of Treasury refused to accommodate her, Complainant traveled thirty-five miles to her home whenever she needed to perform a dialysis treatment and had to utilize leave hours for her absences.

34. Additionally, Defendants' resistance and hostility to Complainant's accommodation requests caused her significant emotional distress during a time when she was experiencing serious health issues.

35. In her position as a Customer Service Representative 9, Complainant was permitted to work up to ten hours of overtime per week, but only if she performed forty hours of work per week, excluding annual and sick leave hours. Prior to July 2014, Complainant often worked six to ten hours of overtime per week.

36. During the time that the Department of Treasury refused to accommodate her disability, Complainant used annual and sick leave to complete her dialysis treatments at home, frequently returning to work after midday treatments. As a result, she was unable to complete the forty hours of work time (excluding annual and sick leave) required for overtime eligibility.

37. Additionally, Complainant was unable to stay at her workplace long enough to earn work time expended on annual and sick leave hours, because she needed to return home to complete evening dialysis treatments.

38. As a result, Complainant lost the opportunity to earn overtime pay.

39. Complainant began using the Nursing Room for her dialysis treatments in late January 2015. Complainant continued to require dialysis treatments until her death in 2018, utilizing the Nursing Room whenever necessary.

40. As recently as September 2017, Complainant continued to face resistance to her accommodation, when another employee filed a health and safety complaint concerning the Complainant's use of the Nursing Room to perform dialysis. The renewed effort to disrupt Complainant's accommodation caused her additional emotional distress while her health continued to fail.

41. In response to the health and safety complaint, the Department of Treasury conducted an investigation and concluded that the Complainant's accommodation was consistent with applicable health and safety regulations.

42. Defendants' actions caused Complainant significant pain, suffering, and emotional distress as well as financial difficulties.

43. Pursuant to 42 U.S.C. § 2000e-5, incorporated by reference in 42 U.S.C. § 12117(a), the EEOC investigated Complainant's charge and found reasonable cause to believe that the Department of Treasury's denial of Complainant's reasonable accommodation from August 1, 2014 through January 16, 2015 constituted disability-based discrimination, in violation of the ADA.

44. During its investigation, the EEOC also found reasonable cause to believe that the Department of Treasury violated the Complainant's rights under the ADA by improperly disclosing confidential information about her medical condition.

45. After the EEOC's conciliation efforts failed, the EEOC referred this matter to the United States Department of Justice.

46. All conditions precedent to the filing of this action have been performed.

## CAUSES OF ACTION

### COUNT I
### FAILURE TO PROVIDE A REASONABLE ACCOMMODATION
**(Title I of the Americans with Disabilities Act)**

47. The United States re-alleges and incorporates by reference the foregoing paragraphs 1 through 46.

11

48. Title I of the ADA, 42 U.S.C. §§ 12111-12117, and its implementing regulation, 29 C.F.R. Part 1630, prohibit covered employers from discriminating against qualified individuals on the basis of disability, including by failing to provide reasonable accommodations to qualified employees with disabilities.

49. By their conduct detailed above, the Department of Treasury violated the ADA, 42 U.S.C. §§ 12111-12117, and its implementing regulation, 29 C.F.R. Part 1630, which mandate that covered employers, such as the Department of Treasury, not discriminate against qualified individuals on the basis of disability in employment practices.  42 U.S.C. § 12112(a); 29 C.F.R. § 1630.4.

50. At all relevant times, the HR staff were employed by Defendant CSC and acted on behalf of the Department of Treasury and in accord with the direction, policies, and work rules of the appointing authorities, Michigan Civil Service Rules and Regulations, and guidance from Defendant OSE.

51. An employer discriminates against an otherwise qualified individual on the basis of disability when it does not make "reasonable accommodations to the known physical or mental limitations" of the individual, unless the employer "can demonstrate that the accommodation would impose an undue hardship on the operation of the business . . . ." 42 U.S.C. § 12112(b)(5)(A); 29 C.F.R. § 1630.9(a).

12

52. Complainant was an individual with a disability under the ADA because she had kidney disease, which substantially limited the operations of her renal system, a major bodily function. 42 U.S.C. § 12102(1)(A), (2)(B); 29 C.F.R. § 1630.2(g)(1)(i), (h)(1), (i)(1)(ii).

53. During all relevant times, Complainant was a qualified individual as defined in the ADA. 42 U.S.C. § 12111(8). Complainant was qualified for the position of Customer Service Representative 9 with the Department of Treasury because she could perform the essential functions of the job with or without a reasonable accommodation. *See* 42 U.S.C. § 12111(8); *see also* 29 C.F.R. § 1630.2(m).

54. Since 2013, Defendants have known that Complainant had a disability. In May 2014, Complainant again notified Defendants of her disability when she submitted a reasonable accommodation request form stating that she had "end stage kidney disease requiring dialysis for life or until kidney transplant …."

55. Though the Department of Treasury temporarily granted the accommodation request, the Department of Treasury refused to extend the accommodation, even though the accommodation was reasonable and would not have imposed an undue hardship. When Complainant submitted a subsequent

13

request for the same accommodation, the Department of Treasury denied her request.

56. As a result of the Department of Treasury's discriminatory conduct, Complainant suffered financial damages.

57. Complainant also experienced significant pain, suffering, and emotional distress because of Department of Treasury's failure to accommodate her.

## COUNT II

### IMPROPER DISCLOSURE OF CONFIDENTIAL INFORMATION CONCERNING THE COMPLAINANT'S MEDICAL CONDITION
**(Title I of the Americans with Disabilities Act)**

58. The United States re-alleges and incorporates by reference the foregoing paragraphs 1 through 57.

59. The ADA, 42 U.S.C. §§ 12111-12117, and its implementing regulation, 29 C.F.R. Part 1630, permits covered employers, such as the Department of Treasury, to make inquiries into the ability of an employee to perform job-related functions and make inquiries into the nature and severity of the employee's disability, so long as the examination is job-related and consistent with business necessity. 42 U.S.C. § 12112(d)(4)(A)-(B); 29 C.F.R. § 1630.14(c).

60. Information obtained as a result of such an examination or inquiry regarding the medical condition or history of any employee must be treated as a confidential medical record. 42 U.S.C. § 12112(d)(3)(B), (d)(4)(C); 29 C.F.R. § 1630.14(c)(1).

61. Such confidential medical information may be disclosed in three instances: (1) to supervisors or managers regarding necessary restrictions on the work of the employee and necessary accommodations; (2) to medical personnel when emergency treatment is required; and (3) to government officials investigating compliance with this regulation. 42 U.S.C. § 12112 (d)(3)(B), (d)(4)(C); 29 C.F.R. § 1630.14(c)(1). None of these exceptions applies here.

62. After Complainant submitted her accommodation request, Defendants inquired into and obtained information about Complainant's medical conditions and history. *See* 42 U.S.C. § 12112(d)(3)(B), (d)(4)(C); 29 C.F.R. § 1630.14(c)(1). Defendants failed to treat that information as a confidential medical record as required by 42 U.S.C. § 12112(d)(3)(B), (d)(4)(C) and 29 C.F.R. § 1630.14(c)(1).

63. Defendants' conduct as described in this Complaint violated the ADA, 42 U.S.C. §§ 12111-12117, and its implementing regulation, 29 C.F.R. Part 1630.

64. The Complainant suffered damages in the form of significant pain, suffering, and emotional distress because of Defendants' improper disclosure of information concerning her medical condition.

## PRAYER FOR RELIEF

Plaintiff the United States requests the following relief:

(a) Grant judgment in favor of the United States and declare that the Department of Treasury has violated the ADA, 42 U.S.C. §§ 12111-12117, and its accompanying regulation, 29 C.F.R. Part 1630;

(b) Enjoin the Department of Treasury and its agents, employees, successors, and all person in active concert or participation with it, from engaging in discriminatory employment policies and practices that violate the ADA;

(c) Require Defendants to revise policies, practices, and procedures so as to bring their employment policies, practices, and procedures, including their reasonable accommodation practices and their maintenance of medical information, into compliance with the ADA and their accompanying regulation;

(d) Order Defendants to train staff regarding Title I of the ADA's reasonable accommodation and confidentiality requirements;

(e)     Award Complainant's estate damages for the Department of Treasury's failure to comply with the ADA to compensate Complainant for:

    (1)     the use of leave hours and incurrence of travel expenses to complete dialysis treatment at Complainant's home due to Department of Treasury's failure to accommodate;

    (2)     the lost opportunity to earn overtime pay resulting from the Department of Treasury's failure to comply with the ADA;

    (3)     the pain, suffering, and emotional distress that Complainant experienced because of Department of Treasury's failure to accommodate and the improper disclosure of information concerning her medical condition pursuant to and within the statutory limitations of Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a; and

(f)     Order such other appropriate relief as the interests of justice require.

Dated: May 1, 2023

Respectfully submitted,

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

DAWN N. ISON
United States Attorney
Eastern District of Michigan

*s/Shannon M. Ackenhausen*
Shannon M. Ackenhausen (P83190)
Acting Chief of the Civil Rights Unit
Assistant United States Attorney
211 W. Fort Street, Suite 2000
Detroit, Michigan
Telephone: (313) 226-9730
Facsimile: (313) 226-3271
E-mail:
shannon.ackenhausen@usdoj.gov

Attorneys for the United States of America